J-A06032-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| RASUL ALI RYAN | : | No. 823 EDA 2024 |

Appeal from the Order Entered March 4, 2024
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-0003774-2021

BEFORE:   PANELLA, P.J.E., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED MARCH 24, 2025**

The Commonwealth of Pennsylvania appeals from the March 4, 2024, order entered in the Court of Common Pleas of Delaware County, which granted Appellee Rasul Ali Ryan's motion to suppress the call detail data and historical cell-site location records for cell phone number (484) ***-2958 for the period of March 15, 2020, to March 20, 2020, which the police seized from the subscriber, T-Mobile/Metro PCS ("T-Mobile"), via a search warrant.[1]  After a careful review, we reverse the trial court's March 4, 2024, order granting Appellee's motion to suppress the call detail data and historical cell-site location records from T-Mobile for cell phone number ending in 2958 and

_____

[*] Former Justice specially assigned to the Superior Court.

[1] In its notice of appeal, the Commonwealth certified the trial court's order will terminate or substantially handicap the prosecution.  **See** Pa.R.A.P. 311(d).

remand for further proceedings. Since the Commonwealth has not challenged the remaining portions of the trial court's March 4, 2024, order, we affirm as to the trial court's holding in abeyance Appellee's motion to exclude Instagram records and granting Appellee's motion to exclude evidence pertaining to a DefendTex light.

The relevant facts and procedural history are as follows: On March 20, 2020, Jamel Denniston was shot and killed in Clifton Heights, Pennsylvania. On that same date, the Commonwealth filed a criminal complaint charging Appellee with, *inter alia*, first-degree murder, and a warrant was issued for Appellee's arrest.

On March 24, 2020, Detective David Tyler applied for and obtained a search warrant seeking, *inter alia*, to seize from T-Mobile the call detail records and the historical cell-site location information[2] for cell phone number (484)

_____

[2] The Commonwealth notes that the requested "call detail records," which are logs maintained by a cellular provider, include the historical information related to the "outgoing and incoming phone calls [and text messages] associated with the given cell phone number" during the period from March 15, 2020, to March 20, 2020, and not the actual content of the phone call or text messages. Commonwealth's Brief at 5 n.2. Moreover, the cell tower information at issue pertains to historical cell-site location information, which is information collected and stored by wireless carriers when a user's cell phone connects to a specific radio antenna, or cell-site. **See Carpenter v. United States**, 585 U.S. 296, 138 S.Ct. 2206 (2018) (drawing a distinction between real-time and historical cell-site location information). Thus, historical cell-site location records assist the police in chronicling the cell phone user's past movements through the record of his cell phone signals. **See id.** Historical cell-site location is typically found within call detail records. **See id.** The cell tower information at issue does not pertain to real-time cell-
*(Footnote Continued Next Page)*

***-2958 for the period of March 15, 2020, to March 20, 2020. Search Warrant, 3/24/20.

On May 5, 2020, the police arrested Appellee. On July 10, 2023, Appellee filed a counseled motion seeking to suppress evidence recovered from his electronic devices. Appellee sought to suppress "all evidence recovered directly from his cell phones as well as all derivative evidence discovered as a result of the initial unlawful search." Appellee's Motion to Suppress, filed 7/10/23, at 1. Appellee noted he was seeking the suppression of information derived from his Instagram account, photos therefrom, and direct messages related thereto. Furthermore, he noted the police received "a complete dump of all four (4) phones" associated with Appellee, and he was seeking the suppression of all information derived therefrom. *Id.* at 6. Appellee averred the search warrants related to his cell phones were not supported by probable cause and were overly broad.

Moreover, on November 14, 2023, Appellee filed a counseled motion seeking to suppress the call detail data and historical cell-site location records related to Appellee's cell phone number ending in 2958 for the period of March 15, 2020, to March 20, 2020. Appellee averred, *inter alia*, that the search warrant served upon T-Mobile, through which the police secured the cell data

_____

site location information, and it is not a "tower dump" (*i.e*, a "download of information on all the devices that connected to a particular cell-site during a particular interval"). **See Carpenter**, 585 U.S. at 316.

- 3 -

and cell tower records at issue, was not supported by probable cause and was overly broad. Appellee claimed his federal and constitutional rights were violated by the seizure of the information related to the call detail data and historical cell-site location information.

Further, on November 14, 2023, Appellee filed a motion *in limine* requesting the trial court preclude the Commonwealth from mentioning the recovery of a "DefendTek" tactical light, which was recovered during Appellee's arrest.

On November 21, 2023, the trial court held a hearing to address Appellee's motion *in limine*, as well as his motions to suppress. At the commencement of the hearing, the Commonwealth informed the trial court that the parties had reached an agreement as to Appellee's four iPhones and the search warrants pertaining thereto. Specifically, the Commonwealth represented that "there was no evidence developed as a result of any [search] of any of th[e] identified cell phones." N.T., 11/21/23, at 4. The Commonwealth, with the agreement of defense counsel, provided the trial court with a proposed order indicating the Commonwealth would not use any evidence derived from the cell phones. As discussed *infra*, the trial court accepted the order.

The trial court then asked defense counsel to clarify the evidence, which Appellee was seeking to suppress. Focusing on the information seized from T-Mobile, Defense counsel indicated Appellee was seeking the suppression of

"any and all physical or digital evidence confiscated based on the search warrant." *Id.* at 7.  In this vein, defense counsel indicated the police sent a search warrant to "T-Mobile for subscriber information, cloud data, and a lot of other evidence based on the warrant." *Id.*  Defense counsel averred the search warrant was not supported by probable cause and/or was overly broad. *Id.* at 7-13. Defense counsel alleged a "lack of nexus" between the records pertaining to the call detail records, historical cell-site location information, and the crimes at issue.  *Id.* at 9.

At this point, the Commonwealth offered the testimony of Detective David Tyler, who is employed by the Delaware County District Attorney's Office, homicide division. *Id.* at 16.  Detective Tyler testified he prepared the search warrant on March 24, 2020, to be served on T-Mobile for a specific phone number, (484) ***-2958.  *Id.* at 18.  Detective Tyler noted the search warrant specified a certain period: March 15, 2020, to March 20, 2020. *Id.* Detective Tyler indicated that he presented the search warrant application, along with the affidavit of probable cause, to a magisterial district judge, who signed the warrant on March 24, 2020, at 9:30 a.m. *Id.* at 21. Thereafter, T-Mobile provided the police with the call detail records and historical cell-site location records for the number ending in 2958 for the relevant time.

At the conclusion of the hearing, as it relates to Appellee's November 14, 2023, motion to suppress the call detail data and historical cell-site location records for the number ending in 2958 from T-Mobile, the trial court

indicated it would order the notes of testimony from the hearing, provide each party with an opportunity to file a brief in support of their position, and take the matter under advisement. *Id.* at 22.

As it relates to Appellee's challenge to the introduction/suppression of the information from Appellee's Instagram account, which was presented in Appellee's July 10, 2023, motion, the Commonwealth indicated that the Commonwealth did not intend to introduce into evidence any pictures or "actual content" from Appellee's Instagram. *Id.* at 23. However, the Commonwealth "would be seeking to admit identifying information, meaning subscriber information and/or a handle for Instagram," which was obtained via the search warrant. *Id.* at 24, 26. In response, defense counsel asked that all information pertaining to Appellee's Instagram account be excluded. *Id.* The trial court indicated it would take this matter under advisement.

As it relates to Appellee's motion to exclude the DefendTex light, which was raised in Appellee's November 14, 2023, motion *in limine*, the Commonwealth requested that Detective Tyler re-take the stand. Detective Tyler testified the DefendTex is a tactical light attachment for a semi-automatic weapon. *Id.* at 30. He indicated the light was recovered during the arrest of Appellee. *Id.* Specifically, Appellee ran when he saw the police, and the police chased him. *Id.* The police found Appellee hiding under a bush near a walkway. *Id.* at 31. The tactical light was recovered from the path of the chase on the walkway between two houses. *Id.* On cross-examination,

Detective Tyler admitted he did not see Appellee holding the tactical light. **Id.** at 32.

Defense counsel argued the DefendTex light was irrelevant since there was no nexus between the light and the crimes at issue. **Id.** at 34. Defense counsel further averred the introduction of the evidence would be highly prejudicial and the probative value *de minimis*. **Id.** The Commonwealth responded that the light was discarded as Appellee fled, thus demonstrating consciousness of guilt. **Id.** at 38.

The trial court indicated it was inclined to make a ruling about the admissibility of the DefendTex light during trial but that it was taking the matter under advisement. **Id.** at 35-36.

As indicated *supra*, during the hearing, the trial court indicated it accepted the parties' agreement as to the cell phones (which did not include an agreement as to the call detail data or cell tower records provided by T-Mobile for cell phone number ending in 2958 or Appellee's Instagram account). Thus, the trial court entered the following relevant order on November 21, 2023 (verbatim):

> [I]t is hereby ORDERED AND DECREED that the Commonwealth will not present any evidence recovered from the following cell phones at trial:
>
> 1) BLACK IPHONE (Defense exhibit A; Commonwealth item #246).
>
> 2) BLACK IPHONE WITH CRACKED SCREEN (Defense exhibit B; CW item #244).

3) PINK/ROSE COLORED PHONE (Defense exhibit C; Commonwealth item #247).

4) BLACK ZTE PHONE (Defense exhibit D; Commonwealth item #247).

Nor will the Commonwealth present any evidence derived from any of the within described cell phone devices.

Trial Court Order, filed 11/21/23, at 1 (bold omitted).

Thereafter, the parties filed briefs in support of their respective positions as to the suppression of the call detail data and historical cell-site location records from T-Mobile for cell phone number ending in 2958.

On March 4, 2024, the trial court entered an order granting Appellee's motion to suppress call detail records and cell tower records from T-Mobile for cell phone number ending in 2958; held Appellee's motion seeking to exclude Instagram records in abeyance; and granted Appellee's motion *in limine* to exclude evidence pertaining to the DefendTex light.

As it relates to the suppression of the call detail data and cell tower records,[3] the trial court provided the following conclusions of law:

The Supreme Court of Pennsylvania has held that an individual has an expectation of privacy in his location and physical movements as for real-time cell-site location information.[4]

_____

[3] As discussed *infra*, the Commonwealth does not challenge the trial court's March 4, 2024, order as it pertains to its ruing regarding Appellee's Instagram account or the DefendTex light.

[4] We note the trial court mistakenly indicated the instant matter involves "real-time cell-site location information." In fact, in the affidavit of probable cause, the Affiant (Detective David Tyler) specifically indicated he was seeking "Historical Records 3/18/2020-3/20/2020." Search Warrant Application,
*(Footnote Continued Next Page)*

> ***Commonwealth v. Pacheo***, 263 A.3d 626, 640 (Pa. 2021) (citing ***Carpenter v. United States***, 585 U.S. 296, 138 S.Ct. 2206 (2018)).
>
> In ***Commonwealth v. Ani***, the Superior Court of Pennsylvania held that, while the affidavit of probable cause for a search warrant for cell phones failed to establish a nexus between the crimes and the defendant's phone, the affidavit established probable cause that the defendant possessed the cell phone while committing the crimes. ***Commonwealth v. Ani***, 293 A.3d 704, 729 (Pa.Super. 2023).
>
> [In ***Ani***,] [t]he Superior Court of Pennsylvania held that there was probable cause to obtain records concerning the cell phone movements because the affidavit mentions a witness observing the defendant using the cell phone's flashlight while functionally committing the crime. ***Ani***, ***supra***, at 729.
>
> In this case, the affidavit of probable cause does not establish a nexus between the murder of Jamal Denniston and [Appellee's] possession of a cell phone.
>
> The affidavit of probable cause only states: "Based on training and experience in conducting criminal investigations, your Affiant knows that persons involved in criminal activity commonly utilize cellular phones prior, during, and after committing a crime to communicate with co-conspirators and other potential witnesses."
>
> The affidavit of probable cause does not state that [Appellee] used a cell phone prior, during, or after the murder of Jamal Denniston.
>
> The affidavit of probable cause does not state [Appellee] used a cell phone to contact potential witnesses after the murder of Jamal Denniston.

---

Affidavit of Probable Cause, issued 3/24/20, at 5. We note that "real-time cell-site location" involves the police securing a search warrant before a cell phone "pings" in real time whereas "historical cell-site location information" involves the police securing a search warrant to examine a cell phone's past connections to specific cell-sites. ***See Commonwealth v. Pacheo***, 263 A.3d 626 (Pa. 2021).

The affidavit of probable cause fails to establish probable cause of nexus between the murder of Jamal Denniston and [Appellee's] cell phone site location information prior, during, or after the crime.

Furthermore, the affidavit of probable cause fails to establish a nexus between the murder of Jamal Denniston and the remaining items requested to be searched concerning the cell phone. *See Commonwealth v. Green*, 265 A.3d 541 (Pa. 2021); *Commonwealth v. Orie*, 88 A.3d 983 (Pa.Super. 2014).

The [trial] court finds the cell data, cell tower records, and remaining requested items in the search warrant, with warrant control number 20-0810 for T-Mobile [] records for phone number [ending in] 2958, are not admissible because the affidavit lacks probable cause and lacks a nexus between the murder of Jamal Denniston and [Appellee's] cell phone as written in the affidavit of probable cause.

Trial Court Order, filed 3/4/24, at 9-11 (paragraph numbering and some citations omitted) (footnote added).

The Commonwealth filed a motion for reconsideration, which the trial court denied on March 8, 2024. On that same date, the Commonwealth filed a notice of appeal from the trial court's March 4, 2024, order. All Pa.R.A.P. 1925 requirements have been met.

On appeal, the Commonwealth avers the trial court erred in granting Appellee's motion to suppress the call detail data and historical cell-site location records from T-Mobile for the period from March 15, 2020, to March 20, 2020, for cell phone number ending in 2958.[5] Specifically, the

---

[5] The Commonwealth does not challenge the trial court's March 4, 2024, order granting Appellee's motion *in limine* to exclude the DefendTek light or the trial court's ruling holding in abeyance the issue of the admissibility of the evidence pertaining to Appellee's Instagram account.

- 10 -

Commonwealth avers the trial court erred in holding the search warrant was overly broad and not supported by probable cause. The Commonwealth asserts the trial court misstated the relevant law in holding that "because [Appellee] did not use 'a cell phone prior, during, or after the murder,' or did not use 'a cell phone to contact potential witnesses after the murder,' the required nexus was absent." Commonwealth's Brief at 12 (quoting Trial Court Order, filed 3/4/24, at 10).

We apply the following standard of review when the Commonwealth has filed an appeal from the grant of a motion to suppress:

> When reviewing the grant of a motion to suppress, we consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. We are bound by the factual findings of the suppression court that are supported by the record. We review the legal conclusions *de novo.*

**Commonwealth v. Adorno**, 291 A.3d 412, 415 (Pa.Super. 2023) (citations and quotation marks omitted).

Both the United States Constitution and the Pennsylvania Constitution protect citizens from unreasonable searches and seizures. **See** U.S. Const. amend. IV; Pa. Const. art. 1, § 8. In **United States v. Carpenter**, 585 U.S. 296, 138 S.Ct. 2206 (2018), the High Court held that requests for historical cell-site location information from wireless carriers constitutes a "search" within the meaning of the Fourth Amendment of the United States Constitution, thereby generally requiring a warrant supported by probable cause. In **Commonwealth v. Williams**, 324 A.3d 1252 (Table), 2024 WL

3494122 (Pa.Super. filed 7/22/24) (unpublished memorandum),[6] this Court specifically noted the warrant requirement includes call detail records.

To be valid, a search warrant must be supported by probable cause. ***Commonwealth v. Jacoby***, 170 A.3d 1065, 1081 (Pa. 2017). Regarding search warrants, our Supreme Court has explained:

> The existence of probable cause is measured by examining the totality of the circumstances. Probable cause exists where the facts and circumstances within the affiant's knowledge and of which he has reasonably trustworthy information are sufficient in and of themselves to warrant a [person] of reasonable caution in the belief that a search should be conducted. A magisterial district judge, when deciding whether to issue a search warrant, must make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit…there is a fair probability that contraband or evidence of a crime will be found in a particular place. Conversely, [a] court reviewing a search warrant determines only if a substantial basis existed for the [magisterial district judge] to find probable cause.

***Id.*** at 1081-82 (internal citations and quotation marks omitted).

An affiant must establish a nexus between the item to be searched and the suspected crime committed. ***Commonwealth v. Jones***, 988 A.2d 649, 667 (Pa. 2010). A warrant is unconstitutionally overbroad where it authorizes a search and seizure of specific material for which there is no probable cause. ***Commonwealth v. Green***, 265 A.3d 541, 551 (Pa. 2021).

---

[6] We note that, pursuant to Pa.R.A.P. 126(b), unpublished non-precedential decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value.

Importantly, "[t]he issuing authority in determining whether probable cause has been established, may not consider any evidence outside the affidavits." *Commonwealth v. Leed*, 186 A.3d 405, 412 (Pa. 2018). In other words, the four corners of the affidavit attached to the search warrant application must provide the reviewing magisterial district judge with a sufficient basis for a finding of probable cause. *Id.* Once a search warrant is challenged, the Commonwealth bears the burden of establishing that the magisterial district judge had a substantial basis for concluding that probable cause existed. *Id.*

With the foregoing legal precepts in mind, we begin by examining the affidavit of probable cause attached to the warrant in the case *sub judice*. Relevantly, the affidavit of probable cause provides as follows:

> Your Affiant, Detective David Tyler, is currently employed by the Delaware County Office of the District Attorney Criminal Investigation Division. Detective David Tyler is empowered to conduct criminal investigations and make arrests for violations of the Pennsylvania Crimes Code[.] As a law enforcement officer in the Commonwealth of Pennsylvania, Detective David Tyler has applied for and executed search warrants to search for and seize any relevant evidence, including but not limited to weapons, fruits of a crime, forensic evidence, documents, and phone records….Your Affiant has gained experience in conducting criminal homicide investigations through training in classes and everyday work related to conducting these types of investigations. Your Affiant has participated in the execution of search warrants related to criminal homicide.
>
> This affidavit is made in support of an application for disclosure of records from an electronic communications service related to violations of Title 18, § 2501(A), Criminal Homicide. Your Affiant believes that there is probable cause to obtain the above records for such evidence and that such evidence

constitutes the instrumentalities, fruits, and evidence of violations of Title 18, § 2501(A), Criminal Homicide.

On Friday, March 20, 2020, at 12:35 p.m., Clifton Heights Police Officer Sgt. Ryan Berry…was dispatched to [] Rockbourne Road for a gunshot victim. Upon arrival, Berry was directed to a second-floor room where a deceased black male identified as Jamal Denniston was lying on the floor. Denniston appeared to have been shot multiple times in his torso area. Berry secured the scene and called for detectives including CID for assistance in a homicide investigation.

Shortly thereafter, multiple witnesses were discovered and transported to Clifton Heights Police Department to be interviewed. CID Detectives Dave Tyler [] and Tim Deery interviewed all of the witnesses. The names and addresses of all the witnesses are known to your Affiants, Detective Tyler and Sgt. Stephen Brown.

Based on the interviews of all the witnesses, the following is a synopsis of the events surrounding the murder of Denniston. This synopsis is by no means meant to be all inclusive but does summarize the interviews conducted. All of the witnesses provided a recorded statement and will be available to testify at trial. Three of the witnesses indicated that they were hanging out in a second-floor room at [] Rockbourne Road, smoking marijuana. One of the witnesses left the residence and went to the 7-11 to purchase rolling papers. As that witness was leaving the 7-11, he/she had a verbal/physical altercation with Denniston, who he/she has known in passing. The witness said the altercation was over money. The witness said he/she then returned to the property on Rockbourne Road and advised the others of the altercation with Denniston. According to the witnesses, a black male known to all of them as "Shizz" was also in the residence at that time but then left for a short period of time.

Shortly thereafter, Denniston arrived at the residence and walked into the second-floor room where all (4) of the witnesses were. Denniston had his back to the door of the room and was speaking with 2 of the witnesses as the other two remaining witnesses looked on. Within a minute of Denniston arriving in the room, all of the witnesses explained a black male entered the room behind Denniston, raised a black semi-automatic handgun, and began firing into Denniston's body. Three of the four witnesses stated that they knew the black male to be "Shizz." One

- 14 -

of the witnesses also knew "Shizz" as "Sul." After the shots rang out, all of the witnesses and "Shizz" fled the scene.

At 12:47 p.m., Christine Smith of the Mercy Fitzgerald Medic Unit pronounced Denniston [deceased] at the scene. Delaware County Medical Examiner Investigator Jennifer Gilliard arrived and transported Denniston's body to the ME's Office. According to Gilliard, Denniston suffered what appeared to be 5 gunshot wounds to the back. CID Crime Scene Detectives Reardon and Alexander processed the crime scene. According to Reardon, eight (8) spent 40 caliber FCCs were discovered in the room where Denniston was shot and killed. After identifying "Shizz" as the person who shot and killed Denniston, one of the witnesses retrieved a cell phone number from his/her telephone for "Shizz:" (484) ***-2958. After conducting several record checks for the telephone number, your Affiants identified Rasul Ali Ryan (Sul). DOB */*/** as the suspect for this murder. Your Affiants prepared an eight-person photo array including a photo of Rasul Ryan. Three witnesses that were in the room at the time of the murder picked Ryan out of the photo array as the person who shot and killed Denniston. A fourth witnesses, who was walking out of the residence as Ryan was entering the residence, picked Ryan out of the photo array also. That fourth witness stated that, several seconds after passing Ryan as Ryan went upstairs, he/she heard multiple gunshots.

Based on training and experience in conducting criminal investigations, your Affiant knows that persons involved in criminal activity commonly utilize cellular phones prior, during, and after committing a crime to communicate with co-conspirators and other potential witnesses. Call detail records may be significant in identifying who the owner/possessor was communicating with in the time leading up to, during, and after the Homicide. Additionally, cell-site data can show locations of where the cellular device was being used during transmissions.

Through this investigation, your Affiant has confirmed through WHOOSTER, a law enforcement phone number look up tool, that the targeted telephone number [ending in 2958] is currently being utilized by T-Mobile/MetroPCS.

Your Affiant is requesting…call detail records, including detailed information in reference to all known outgoing and incoming calls associated with the account, dates and times calls were made, and duration of all calls made or received. This is to include any other pertinent call detail records including special

feature codes, or any other codes that are maintained in the normal course of business for T-Mobile of any T-Mobile cellular numbers identified in the course of the investigation. In addition to voice calls, this would also include any detail records showing text messages, MMS messages, or data activity. In the event the requested call detail records contain other T-Mobile customer numbers, identified as either incoming or outgoing calls, T-Mobile will provide subscriber information to the specific numbers identified, if requested. Cell site information, to include all known cell towers associated with outgoing and incoming calls (call detail records). This information is to include any sector information, if known, cell-site location, and any other related material that would be necessary to identify the location and sector in reference to the cell-site information associated with the call detail records. In the event text message, MMS messages, and Data activity are also available with cell-site information, this information would be included in this request.

Search Warrant Application, Affidavit of Probable Cause, issued 3/24/20, at 2-4 (bold omitted).

We agree with the Commonwealth that, within the four corners of the affidavit, a substantial basis existed for the magisterial district judge to find probable cause. *See Jacoby*, *supra*. Detective David Tyler articulated specific and individualized facts to establish probable cause to obtain call detail records and historical cell-site location records for cell phone number ending in 2958, namely: (1) the shooting homicide of Jamal Denniston occurred at [] Rockbourne Road in Clifton Heights on March 20, 2020; (2) Denniston was shot several times in the presence of three witnesses; (3) a fourth witness walked out of the residence and passed Appellee as he was entering the residence just before the witness heard the shots; (4) after the shooting, three of the four witnesses informed the police that the shooter was "Shizz," and

one of the witnesses also knew "Shizz" as "Sul"; (5) one of the witnesses retrieved from his/her own cell phone a cell phone number ending in 2958 and informed the police it was "Shizz's" cell phone number; and (6) all four witnesses identified Appellee as the shooter from a photo array.

Additionally, Detective Tyler described his knowledge and experience from prior homicide investigations involving cell phone data and historical cell-site location information. Specifically, he explained that his training and experience indicates that criminal suspects commonly use cell phones prior, during, or after committing a crime to communicate with co-conspirators or other potential witnesses; call detail records reveal the existence of co-conspirators and others with whom the criminal suspect communicated with prior, during, or after committing a crime; and historical cell-site location information provides locations used during these transmissions to place the suspect at or near the scene.

Under the totality of the circumstances, we conclude the search warrant was supported by probable cause. *See Carpenter*, *supra* (discussing the probable cause needed to secure a search warrant for historical cell-site location information); *Wiliams*, *supra* (discussing probable cause needed to secure a search warrant for call detail records). Moreover, as indicated *supra*, the Affiant, Detective Tyler, provided the specific nexus between the items to be searched and seized (the call detail records and historical cell-site location records), and Appellee's location during the murder at issue. *See Jones*,

*supra*. The search warrant was not overbroad in that it set forth the specific material sought (the items sought from the subscriber for a particular cell phone number and for a particular period) for which there was probable cause. *See id.* Thus, we agree with the Commonwealth that the trial court erred in granting Appellee's motion to suppress.

As the Commonwealth notes, the trial court, relying on *Commonwealth v. Ani*, 293 A.3d 704, 729 (Pa.Super. 2023), found a lack of probable cause on the basis "the affidavit of probable cause does not establish a nexus between the murder of Jamal Denniston and [Appellee's] possession of a cell phone." Trial Court Order, filed 3/4/24, at 10. In this vein, the trial court noted "[t]he affidavit of probable cause does not state that [Appellee] used a cell phone prior, during, or after the murder of Jamal Denniston." *Id.*

However, we agree with the Commonwealth that the trial court misapplied *Ani* in the instant matter. Relevantly, in *Ani*, the police obtained a search warrant to search a defendant's cell phone for certain data. *Ani*, 293 at 709. In the affidavit of probable cause, the officer summarized the first victim's report that a man entered her apartment's bedroom, shone a light from his cell phone on her, and then fled. *Id.* The officer provided information regarding surveillance video showing the defendant entering the first victim's apartment. *Id.* Further, the officer provided information that, twenty days earlier, a second victim arrived home to find the defendant in her apartment,

the defendant said he was looking for the roommate, and he then used his cell phone. *Id.* The officer provided information that a third victim told police she heard someone inside her apartment, a neighbor confronted the defendant, and the neighbor identified the defendant from a photo array. *Id.* A magisterial district judge issued a search warrant for the defendant's cell phone seeking GPS information, phone calls he made from the phone, the use of the flashlight, and photos/videos, which the officer hypothesized the defendant had taken. *Id.*

Applying the principles related to probable cause and nexus, this Court found there was no probable cause to believe the defendant's cell phone would contain any actual evidence of the crimes (burglary and criminal trespass). *See id.* This Court found no evidence linking the defendant's use of a phone to the crimes for purposes of seizing photos, videos, or the content of communications. *See id.* However, we found sufficient probable cause to examine the cell phone for locational data and flashlight usage. *See id.* We specifically noted that probable cause existed to examine the cell phone for GPS data to determine the defendant's location at the time of the break-ins. *See id.*

Initially, we note that in the case *sub judice*, the Commonwealth agreed it would not use any evidence derived from Appellee's cell phones. In fact, the trial court entered an order on November 21, 2023, indicating the

Commonwealth would not present any evidence recovered from the cell phones, and the Commonwealth has not appealed this order.

Moreover, as it pertains to the information seized from T-Mobile, as indicated *supra*, Detective Tyler averred in the affidavit of probable cause his knowledge and experience as it relates to homicide investigations. Specifically, he indicated criminal suspects commonly use cell phones prior, during, or after committing crimes to communicate with co-conspirators or other potential witness. Also, historical cell-site location information commonly places the suspect at the scene of the crime. As indicated above, we find this established a sufficient nexus between the information sought from the subscriber, T-Mobile, for the cell phone number at issue.

Simply put, at the time Detective Tyler made his request for a search warrant, he had information indicating the cell phone number ending in 2958 was used by Appellee, *i.e.*, the murder suspect, and seizing call data records and historical cell-site location information would provide evidence of Appellee's location at the time of the shooting, as well as a fair probability of witnesses or other co-conspirators. ***See generally Pacheo***, ***supra*** (holding sufficient probable cause established for real-time cell site location information where the affidavit of probable cause identified a phone number attached to a defendant and the police averred the information from the subscriber would aid in the apprehension of the defendant). Viewing the four corners of the affidavit itself, the issuing magisterial district judge found the detective's

experience and knowledge sufficient to establish probable cause. **See Jacoby**, **supra**. We agree and conclude the trial court erred in holding otherwise.

Thus, we reverse the trial court's March 4, 2024, order granting Appellee's motion to suppress call detail data and historical cell-site location records from T-Mobile for cell phone number ending in 2958. Since the Commonwealth has not challenged the remaining portions of the trial court's March 4, 2024, order, we affirm as to the trial court holding in abeyance Appellee's motion seeking to exclude Instagram records and granting Appellee's motion *in limine* to exclude evidence pertaining to the DefendTex light.

Order reversed, in part, and remanded for further proceedings. Order affirmed, in part. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/24/2025